```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                    DALLAS DIVISION

CELIA LOPEZ,                     §
                                 §
              Plaintiff,          §
                                 § Civil Action No. 3:05-CV-1724-D
VS.                              §
                                 §
H&R BLOCK FINANCIAL              §
ADVISORS, INC.,                  §
                                 §
              Defendant.          §
```

MEMORANDUM OPINION
AND ORDER

In this action for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the court must decide whether plaintiff's contractual agreement to submit her Title VII claims to binding arbitration is enforceable. Concluding that it is, the court grants defendant's motion to compel arbitration and stays this case.

I

Plaintiff Celia Lopez ("Lopez") sues defendant H&R Block Financial Advisors, Inc. ("HRB") alleging that it is liable under Title VII for sex and pregnancy discrimination and retaliation arising from HRB's decision to terminate her employment. HRB is headquartered in Michigan. Lopez worked at HRB's Dallas, Texas office as a stockbroker.

HRB moves the court under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq.*, to compel Lopez to participate in binding

arbitration and to stay or dismiss the case, contending that Lopez contractually agreed in both her application for employment and employment agreement to submit her Title VII discrimination and retaliation claims to binding arbitration.  Lopez opposes the motion, arguing that the application does not contain an enforceable agreement and that the arbitration agreement in the employment agreement is unenforceable as unconscionable and lacking consideration.

When Lopez commenced her employment with HRB, she signed a Financial Advisor Employment Agreement and Restrictive Covenants ("Employment Agreement") that provides that it is governed by the laws of the State of Michigan and that contains the following Arbitration Agreement:

> The parties also agree to arbitrate any dispute, claim or controversy that may arise between the undersigned employee and the Company, including any controversy arising out of the employee's employment or termination of employment with the Company, including but not limited to claims of race, color, religion, sex, national origin or any other form of unlawful discrimination prohibited by any applicable federal, state or local civil rights law, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Standards Act or any other federal, state or local equal employment opportunity law, or any other controversy that is required to be arbitrated under the rules, constitution or by-laws of the NYSE and/or the NASD as may be amended from time-to-time.  This arbitration shall be conducted pursuant to the respective rules and regulations of the NYSE, NASD, or equivalent arbitration forum, then in effect, as selected by the Company.  Any award

>resulting therefrom may be entered as a judgment by a court of competent jurisdiction and venue, which the parties agree shall include those courts described in Section 11. The foregoing shall not limit the Company from seeking its equitable remedies, as set forth in Section 11, before a court of competent jurisdiction and venue, which the parties agree shall include those courts described in Section 11.  The parties also agree that seeking (and obtaining) injunctive or equitable relief as set forth in Section 11, shall not waive either party's rights to subsequently seek and compel arbitration as set forth in this Section.
>
>The company makes the following disclosures with respect to Arbitration:
>
>A.  Arbitration is final and binding on the parties.
>B.  The parties are waiving their right to seek remedies in court, including the right to a jury trial.
>C.  Pre-arbitration discovery is generally more limited than and different from court proceedings.
>D.  The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
>E.  The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry.
>F.  Any arbitration award may be confirmed in a court and a judgment entered for enforcement and collection.

D. App. 14-15. Section 11 of the Employment Agreement, to which the Arbitration Agreement refers in excluding certain equitable remedies from its scope, in turn refers to §§ 7-10, which are confidentiality and non-compete provisions.

II

A

"The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). "The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts—no more and no less." *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing 9 U.S.C. § 2). "Courts adjudicating a motion to compel arbitration engage in a two-step process." *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). "First, the court must determine whether the parties agreed to arbitrate the dispute[ ]" by applying "the contract law of the particular state that governs the agreement." *Wash. Mut.*, 364 F.3d at 263-64. "'This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). "[T]he 'federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties' or to 'the determination of who is bound' by

the arbitration agreement." *Id.* at 537-38 (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 (5th Cir. 2002)). "Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Wash. Mut.*, 364 F.3d at 263.

There is no question in this case that Lopez's claims fall within the scope of the Arbitration Agreement. It provides, in relevant part, that

> The parties also agree to arbitrate any dispute, claim or controversy that may arise between the undersigned employee and the Company, including any controversy arising out of the employee's employment or termination of employment with the Company, including but not limited to claims of . . . sex . . . or any other form of unlawful discrimination prohibited by . . . Title VII of the Civil Rights Act of 1964.

D. App. 14. Lopez does not contest this point. Nor does Lopez argue that a federal statute or policy renders her claims nonarbitrable. Title VII claims are clearly subject to mandatory arbitration agreements. *See Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996). The dispositive issue is whether Lopez and HRB have a valid agreement to arbitrate. In deciding this question, the court need only address the Employment Agreement, not the employment application.

B

Citing only Texas law, Lopez argues first that the Arbitration Agreement is unenforceable because it lacks mutuality and, in turn,

- 5 -

consideration. She contends the Employment Agreement lacks mutuality because HRB "has carved out from the [arbitration] agreement any equitable claims by [HRB] for breach of restrictive covenants under the Employment Contract (which encompasses nearly the entire universe of potential claims by HRB against Plaintiff)." P. Br. 4.

Because the Employment Agreement provides that it is governed by the laws of the State of Michigan, the court applies Michigan law in deciding whether Lopez and HRB entered into an enforceable Arbitration Agreement. In *Ryoti v. Paine, Webber, Jackson & Curtis, Inc.*, 371 N.W.2d 454 (Mich. Ct. App. 1985) (per curiam), the court rejected the contention that there was no bargained-for consideration given in exchange for an agreement to arbitrate where the plaintiff signed a written arbitration agreement that became part of his employment contract. The court reasoned that "his employment was conditioned upon his signing this agreement [and,] [u]nder these circumstances, it is clear that the arbitration agreement was supported by consideration." *Id.* at 457.

Additionally, Lopez has presented no authority that shows that, under Michigan law, a clause that permits one party to pursue equitable remedies, but still binds that party to arbitrate the merits of the claim, renders the arbitration clause unenforceable. And the Arbitration Agreement itself provides that, if HRB seeks

such remedies, this does not effect a waiver of Lopez's rights to seek and compel arbitration. *See* D. App. 14.

C

Lopez argues second that the Arbitration Agreement is unconscionable. She maintains that this is so because, by providing that arbitration will be conducted "pursuant to the respective rules and regulations of the NYSE, NASD, or equivalent arbitration forum, then in effect, as selected by the Company," HRB has retained the unilateral right to amend or alter the agreement by changing, without notice or limitation, the forum, rules, and regulations of the arbitration. She cites the holding of *Nasir v. Air Liquide America Corp.*, 2004 WL 2236658 (N.D. Tex. Oct. 1, 2004) (Sanders, J.), for the proposition that "where an employer retains the unilateral, unrestricted right to modify or terminate its arbitration policy, any agreement to arbitrate under such terms is illusory." *Id.* at *2.

Lopez's reliance on *Nasir* is misplaced for at least two reasons. First, in *Nasir* Judge Sanders was making an *Erie* prediction concerning how the Supreme Court of Texas would decide a question of *Texas law*. *See id.* ("Texas' highest court has not decided whether an arbitration agreement is illusory when the employer retains the unilateral, unrestricted right to modify or terminate its arbitration policy."). Second, even if Lopez could show that Michigan law is similar to Judge Sanders' "educated guess

- 7 -

as to how the Texas Supreme Court would rule," *id.* (internal quotation marks omitted), the Arbitration Agreement does not give HRB the unilateral, unrestricted right to modify or terminate its arbitration policy, within the meaning of *Nasir*. In *Nasir* the arbitration policy was set out in an employee handbook, the handbook consisted only of guidelines that the employer could revise, amend, or terminate at any time, and there was no prior notification requirement. *Id.* at *1. The employer thus retained the unilateral right to amend the handbook, including the arbitration agreement. *Id.* In the present case, HRB is not entitled to revise, amend, or terminate the Arbitration Agreement. Under the provision at issue, it is only entitled to select the rules and regulations of arbitration, subject to the narrow restriction that they must be the rules and regulations of the NYSE, NASD, or an equivalent arbitration forum, then in effect.

\*   \*   \*

Accordingly, the court holds that HRB has established that there is a valid agreement to arbitrate between the parties and that Lopez's Title VII claims fall within the scope of the Arbitration Agreement. The court therefore grants its January 18, 2006 motion to compel arbitration and stays this case. The court directs the clerk of court to close this case administratively for

statistical purposes.  Either party may move the court to reopen the case to enforce or vacate the arbitration award, if such relief is warranted.

**SO ORDERED.**

March 10, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE